At the first case we're going to hear is Maldini v. Marriott International Court, and Mr. Hellman will hear from you first. Good morning. Thank you, and may it please the Court. I'm Matthew Hellman on behalf of Marriott International. We're back here because the District Court once again certified classes that consist entirely of people who agreed that they would not pursue class relief. Marriott invoked that waiver at every turn, in its answer, throughout discovery, and at class certification. There was no surprise here, and the District Court's contention that Marriott somehow intentionally relinquished the very defense that it repeatedly invoked is replete with legal error. It's foreclosed by the contract's plain text, and foreclosed by uniform precedent. It's also foreclosed by the history of the case. Before plaintiffs moved to certify, plaintiffs said their class claims could arise under any of 31 different contracts. Plaintiffs were insistent on keeping their options open, but Marriott still told them throughout that it would invoke a class waiver defense if applicable, and when plaintiffs chose to pursue the largest classes possible by basing them on the SPG terms, Marriott invoked the class action waiver. This case is as simple as that. Marriott relinquished nothing, let alone intentionally. So I'd like to focus on those issues first this morning, and then turn to the ascertainability and Comcast arguments that provide additional and independent grounds for reversal. So let's start with the District Court's waiver analysis, which really piles legal error upon legal error. The District Court believed and held that the choice of law provision in the party's contract, which specified New York law, was waived when the parties agreed to a bellwether process that included claims and claims that apply different states' law. Marriott did not merely stay silent on choice of law issues when they did that. Marriott reserved choice of law issues, and Marriott did not merely unilaterally reserve choice of law issues. The parties jointly agreed that choice of law would be dealt with later. An expressed reservation of rights that the parties agreed would be appropriate to deal with later is not an intentional relinquishment of yet another right. Another part of the District Court... Can I ask you a question just about the intentional relinquishment standard? So, I mean, there's been different nomenclature, I guess, used to refer to kind of what is going on here, forfeiture, waiver, and then some references to repudiation. Does it make a difference if we move off waiver and think about the case in terms of, say, repudiation? They all cash out to the same answer, Your Honor, because all of them are going to turn first on. There was no inconsistency, lack of...nothing was done inconsistent with the contract in the first place. That would be point number one. And all of those doctrines only work if there's some intentional or known or understood relinquishment, repudiation, whatever word, forfeiture, whatever word you want to use to describe the concept. None of them apply. I suppose we don't want to get too refined on that because there's a doctrine of implicit waiver. If you litigate the case, for instance, you have an arbitration clause and you litigate the case, we imply a waiver of that. And I suppose here if you went ahead and maybe raised it once very early but never thereafter, there could be an argument made on implicit. But I think the principles of waiver are fairly well established. And the issue here is whether, as I understand it, whether you link the class action waiver with venue waiver or whatever and whether you link the class action waiver or you conclude the class action waiver was waived by participating in the multi-district litigation process. Right. And I'm happy to talk about any or all of those points. Choice of law was the first of the linkages that the district court used. The next one was venue. It is, the case law is uniform, 100 percent, that agreeing to an MDL or an MDL that takes place in venue one is not inconsistent with a choice of venue clause in the party's contract. We have a bunch of cases that say that. They have zero that say the opposite. Yeah, but even to get to these discussions, you know, they get to collateral issues. I know the argument is that they're all contained in the same paragraph, the same sentence. But it seems to me if someone, if a clause provides for venue and then says you waive class action treatment, I don't know why a party couldn't waive venue and still preserve the class action provision. Absolutely, particularly where the contract expressly says that clauses are to be treated the analysis below, and I'm happy to go point by point. The provision prohibits collective handling of the claims, including by class action. So it's broader than class action. No, Your Honor, and the text is really important here. It does not say handled individually, no handling individually, including by class action. I didn't say individually. I said prohibits collective handling of the claims. It says handled individually without class action. I think I heard the word including class action. It does not say including. It does not say and class action. It defines individually handling without class action, meaning if it's a class action, that tells you it's not individually handled. And if I could, there's so, there are many, many arguments in the case, but I'd encourage the court to look at page JA 1066, because JA 1066 tells you the story of this case in a way that 1066, a lot to look at here, isn't there? You've been above a thousand. Above a thousand. That's just the appendix. I know, Your Honor. That's just the appendix that you gave us. You referred to it as a lawyer's paradise the last time we were here. Well, it is. And, but there are many, the case had a long, long road. But there are some things that were done right and the way they're supposed to be. And this is one of those things. When we answered in the complaint, we said we had a class action waiver defense. That's what we said. Defense of class action waiver. In discovery, the plaintiffs, as was their right to do, they asked us in an interrogatory, what is the basis of your class action waiver defense? That's 1066. Interrogatory number 14. List all facts supporting your contention that plaintiff's claims are barred in this jurisdiction and hold apart by their agreement to waive participation in a class action. Marriott responds. Marriott states that by enrolling in Starwood's preferred guest program, individual Bellwether plaintiffs agreed to forego participation in the class action. The terms of such agreements are produced by documents and then there's a whole list of base numbers. Nine of them. Four of those base numbers are the SPG terms. We didn't hint that we were going to do this. We didn't imply that we were going to do this. They asked, what is your position on class action waiver? And we told them that if their claims, as certified, would implicate these contracts and these provisions, we would invoke the waiver. So there's an element of... As I understand it, I don't want to advocate, but I did look at the record to some extent. Even though I didn't read every page, I can't tell you that. But it was also covered in depositions and it was also included in that separate section on the motion for certification. There was a separate section addressing the waiver clause. Yes to all of the above. Yes to all of the above. And my friend's brief on the other side doesn't use the word surprise, but that's the thrust of it. That somehow they were taken advantage of. That they didn't know that this was coming. They were told in every way that the law allows us to tell them that it was coming. And they made a strategic decision to certify classes that had SPG members. The district court then tailored the classes to consist only of people who were subject to this waiver that we said we would invoke, which is a risk that they understood that they would be taking. They're entitled to propose a class definition and see what happens with it, but they can't say that we didn't invoke this class action waiver and tell them that it was coming at every time. The last time we were here, I think what this court held was that it is normal and customary to raise a class action waiver defense at class certification. That's what we did. And then the question was, I think, going back, was there some reason to think that that wasn't a valid invocation because of conduct during the litigation? As Judge Niemeyer points out, there was no surprise, no contrary action, no anything. And, again, I think it's just telling that the district court has pointed to things like a venue provision, which even if you want to indulge the assumption that somehow venue is tied to the class action waiver, notwithstanding there are different provisions and there are different sentences or different parts of a sentence, different rights, and there's a severability clause, even if you want to indulge that assumption, it's just wrong on the law that agreeing to an MDL violates venue provision. How could it be? If this court were to hold that, MDLs only happen when there's big-time, multi-jurisdictional litigation, usually multiple contracts. There were 31 in this case. There were different venue provisions in those contracts. There's no one venue that maps on to contracts that are sort of out there in the wild that might have different venue provisions for different reasons. Can I ask you just a quick question about some of the dangling threads of this lawyer's paradise of a case? So assume just very hypothetically that I disagree with the district court. I don't think Mary outweighed enforcement of this class action waiver. There's still the question of unconscionability, I think, and is there also a question of scope? Has that been preserved for us, this question of whether assuming it's an enforceable class action waiver, it covers the tort claims in this case? If you agree with us on the first part, this case is ready to be decided and reversed, and I say that with respect to both of the parts that Your Honor described. Unconscionability, the court said what it said about unconscionability. New York law uniformly, without exception, you'll notice that there's no case that they cite to the contrary, holds that class action waivers are not substantively unconscionable. There's also no procedural unconscionability here, which would be a second requirement that they'd have to meet. It's not like choose one and they win. They have to win both, and they win neither. As for applicability, as we point out in our opening brief, there's no dispute that this clause is applicable to the claims in this case, and the other side did not dispute that in their brief. And that's why I'm wondering if it's sort of in front of us or not, and the district court didn't allude to it. The district court didn't speak to it, but this court has a doctrine we talk about in our cases where an issue is clear and it's not disputed between the parties because the other side didn't even say that it needs to go back. I think you're misunderstanding. I'm suggesting it may be forfeited on appeal. No one has argued it. Oh, we've said throughout that it applies, and I don't know if you have. You have. Yes, yes. You have preserved your argument. We have preserved it, yes. Yes. I'll ask your colleagues about that. I think it is forfeited by them and not disputed, certainly, in any case, in this court. I see my time is dwindling. I think it's over. It's a red light. See the red light? I do see the red light. And we don't issue tickets on the first warning. I appreciate that, Your Honor. If the court has no further questions, I will reserve whatever time I have left. You've got some rebuttal, I see. Good. Thank you very much. Devin Anderson. Thank you, and may it please the court. Devin Anderson on behalf of Accenture, addressing certification of the Rule 23c4 issue classes. Here the district court found that there were insurmountable individualized issues. Before we get to that, and before we move off the waiver question, you suggest in your brief, I think, maybe in a footnote, that Accenture may be able to invoke the class action waiver under an estoppel theory? That's correct. Can you maybe say another sentence about that for me? Sure, Your Honor. We argue this at the district court. It's opinion the district court didn't address it one way or the other, but under the doctrine of equitable estoppel, where the claims that the plaintiffs are pursuing are necessarily arising out of the contracts that they have with Marriott and their claims against Accenture flow directly from that purported contractual relationship that the plaintiffs have with Marriott, we've argued that under doctrines of equitable estoppel, that we're also entitled to invoke the benefit of the class action waiver. Now, the district court ignored that argument, didn't address it. We've preserved it, I think, both before the district court and before this court. So it's not like you're a third-party beneficiary. This is a different argument. It's a different – we're not arguing third-party beneficiary. There's equitable estoppel. We've cited some cases, I believe a dioxide case that goes into that. But for purposes of the limited time that I have here, I do want to talk about the Rule 23c4 issue classes. Once the district court found, as it did here, that there were insurmountable individualized issues of injury and causation that prevented class certification of the negligence claims against Accenture, it was error for the district court to certify a class action anyway and then to recertify it without any analysis or any effort to address the considerations this court flagged in its prior opinion. Simply put in this case, whether you want to call it superiority or call it predominance, there is no benefit to proceeding with a class action just on the duty and breach elements of plaintiff's negligence claims. Now, I want to start by clarifying a few points that came up in plaintiff's brief. Rule 23 required plaintiffs to come forward at the class certification stage and show that they had a mechanism for establishing injury across the class using common proof. Plaintiffs made strategic decisions about which theories they would put forward from the theories that they had initially pleaded in their complaint. They selected two. One of them was the overpayment theory, but there's no dispute that that theory did not apply to my client, Accenture. The only theory that was put forward by plaintiffs was this lost sales, potential revenue from selling their data, which never made any sense as a matter of logic, and the district court rejected as a matter of law. It's just a factual question. So the district court, back when it was Judge Grimm, he sort of rejected it without prejudice because he understood that the plaintiffs had some new theories that they were developing. Whatever happened with that? Nothing. Nothing further has happened from that. That's what happens in Paradise. We're a few circles down from Paradise, I think, Judge Niemeyer, by the time we get to the issues that I'm addressing. But given that finding, that plaintiffs had no way to establish a common injury across the class, Rule 23c4 did not provide a path forward to class certification. And that's for several different reasons. For one, a shared injury is a fundamental class action requirement. I think this comes from Walmart. It comes from even earlier decisions like Schlesinger and Falcon. And this court, last time around, looked at this through the lens of superiority. And I think that's a perfectly fine way to do it. The court could also think about it from the perspective of predominance. But at some point, Rule 23c4 has to involve a careful analysis of the issues left to be decided. And in some ways, I think this court, and the D.C. Circuit, and the Harris decision, I think is also a good touchpoint, invokes a kind of muscular, predominance-like analysis that looks at the issues that remain to be decided. And it asked the district court, in its prior opinion, to do that sort of analysis. The district court didn't do that. It recertified the classes against Accenture in a single sentence and without analysis. Thank you, Your Honor. Tom. All right. We'll hear next from Samuel Issacharoff. Good morning, Your Honors. May it please the Court. Samuel Issacharoff for the Plaintiffs' Club. I think the key issue in this case is obviously the waiver point. And the waiver is contained in one paragraph, in two sentences, in Section 1321 of the agreement. That's what this court remanded for last time for the determination of how the waiver would apply. Now, the court was asking questions about the terminology of waiver forfeiture. And I think that the case law establishes that there are important differences. Forfeiture is the failure to raise something in a timely fashion. And that seemed to be what Judge Grimm was concerned about. But as I understand it, is that not your argument? Our argument is not the forfeiture one primarily, Your Honor. Judge Grimm was concerned that it wasn't raised in any pleading before him for 31 months. But if you look at most of the opinion, it deals with the conduct that was undertaken in bringing this to the MDL. So you are not pressing today sort of a waiver by omission argument? No, we are not. It is in the record, Your Honor, but that's not our principal argument. Our principal argument is that this court remanded to the district court to find what were the terms that might give rise to waiver. And the district court, following the Supreme Court's instructions in Morgan v. Sundance and following the Olano case also from the Supreme Court, an older case in the criminal context, said that when you are dealing with waiver as opposed to forfeiture, the key thing is how have you conducted yourself in the course of litigation. And here the district court made specific findings that repeatedly Marriott acted in derogation of the conditions of 1321. On the venue point, on the choice of law point, on the... Well, those, let's leave those apart. I'm more interested in the notion that I think the court relied directly on is participation in MDL constitutes a waiver because... I don't think, Your Honor, if I may, I don't think the court ever said that. That's their characterization of it. Well, tell me what the court said. Okay. What the court said was that their conduct in the MDL and their advocacy of the MDL is where you find the waiver. It's not being in an MDL. Obviously, an MDL is an order from the Joint Panel on Multidistrict Litigation, and if litigants are ordered to go somewhere, they must go there. We don't dispute... I'm not talking about the venue, and I'm not talking the choice of law. I'm talking about where the statutory provision said you had to proceed individually, not with a class action. That's correct. And... So they went to the district... They have asserted that throughout the case in various places, in the answer and in the interrogatory depositions, in the motion to certify. They've preserved that, it seems to me, from a notion that they deliberately intended to waive it on any standard of waiver. The question is, by participating in the bellwether process in MDL, is that an unwitting waiver? I don't quite follow it because the statute... I mean, the clause says individually, not as a class action. Yes, Your Honor. And it seems to me cases that proceed on that basis can still be MDL cases and have bellwether decisions on various issues. Yes, Your Honor. So there are many parts to your question, and let me take them in sequence. First of all, they did not consistently raise their objection to any kind of class proceeding. They didn't do anything of that sort until 2021. This litigation begins in 2018, so they were... Did you say they waited three years? They waited three years, absolutely. I thought they raised it in their answer. Their answer doesn't come until 2021. Well, that's the first time you raise most offenses. No, Your Honor, it's not. It is the first time there's a plea... I mean, the rules of procedure provide the defenses. If we had that, there's a whole list of defenses that would be waived. That is correct, Your Honor. But now we're in the definitional distinction between forfeiture and waiver. And the Supreme Court, in the Olano case, cited and quoted in the Morgan v. Sundance case only a couple of years ago, draws the distinction between forfeiture, which is what Your Honor is describing now, which is failing to raise the matter in a timely fashion in the pleadings that are required by the rules. And we are not arguing, as I just referred to with Judge Harris's question, we are not saying that they didn't raise it in the appropriate pleadings at the appropriate time. We're saying their conduct for the first three years of litigation was exactly what Justice Kagan... They're not required to file an answer. I'm just talking about the whole concept of the federal rules of procedure. Yes. They could be going on motions to dismiss, jurisdiction, venue, all the 12B6... That's correct, Your Honor. We don't dispute that. The rules do not require you to assert defenses until you get the answer. And the list of defenses are there, and you provide the answer. To require a defendant to put his defenses in connection with, say, a jurisdictional motion has never been required. Your Honor, we don't dispute that. I don't think that's a starter. We don't dispute that. We are not here arguing that they waited... Their first answer, they raised it, right? Their first answer three years into the litigation... I don't care how late it was. It was their first answer under the rules. It was their first chance where they might have forfeited it, as the Supreme Court defines that in Olano and then again in Morgan v. Sundance. How can you forfeit it if you don't have to raise it before? We're not arguing that they forfeited it, Your Honor. How do they waive it before? Let me hypothesize. You file a motion for a summary judgment based on a lack of personal jurisdiction, not summary judgment, 12B01 or 03, whatever it is, for lack of personal jurisdiction. And that takes, they have discovery. They have three years. There's a full opinion. There's an interlocutory appeal that comes back, and then there's an answer filed in three years. That's when they raise the statute of limitations. Statute of limitations is waived if it's not raised. Your Honor, that's absolutely correct. We do not dispute that. What we are saying is, and what the Supreme Court invited the inquiry first in Olano and then in Morgan, was even if you are not required to raise it at this particular point, you may not act in derogation of that. And what the Supreme Court said in Morgan was you have litigants who frequently decide, well, I could go the arbitration route because I have an arbitration clause. What conduct can you have that provides for the waiver of defenses authorized by an answer under the rules? In other words, between the complaint, service of the complaint, and the filing of the answer, what conduct can you conceive of that waives a defense that you have to raise for the first time in the answer? Exactly the conduct that was undertaken in Morgan v. Sundance. I'm asking you not to give me a case. What conduct in this case? What conduct in this case? Seeking to have cases brought in joint fashion in the Bellwether process, which violates the individual clause. Of course, the MDL has said we preserve the initial notion of the litigation, and all the cases are to be treated as if they're going to be separated at the end again. The process does not constitute a waiver. That is correct, but they also acknowledge that venue was proper. I know Your Honor doesn't want to get to the venue provision, but they acknowledge that venue was proper in Maryland. They acknowledge all of these various components. Where were the plaintiffs on all of this? I actually don't know. Did you all object to MDL and say Maryland law was improper? No. Well, aren't these all equitable doctrines? I guess I just don't understand. If your argument is that they somehow repudiated the contract, well, so did you. There's no non-repudiating, non-breaching party here. I just don't get how these equitable doctrines would apply here. What the Supreme Court said in Morgan was that a party that seeks to invoke a contractual provision that has acted in derogation of that in the course of the litigation may not subsequently invoke it against the other party. Right. The non-repudiating, non-waiving party can invoke waiver, but you're not that party. You agreed to the MDL, too. I'm not really getting that. Absolutely. We agreed to the MDL. We agreed to the bellwether process. We agreed to venue in Maryland. We agreed to all these things. The reason, and this is what the district court was pointing to, the reason is that they hoped to get out of the case quicker and cheaper. The reason that they wanted out of this and that they didn't invoke 1321 was because it provided for New York law. And one of the class actions that is involved in this case is a class action under GBL 349 in New York, which has $50 liquidated damages per transgression, and they did not want to live with that. And so what they were seeking was other rulings of the district court, which is what brings this exactly into Morgan. The district court relied in part on the Hill case out of the Ninth Circuit, which is a post-Morgan case in which the Ninth Circuit goes back. You're talking about the district court, Judge Bailey, or district court Judge Rim? Yes, Judge Bailey. Judge Bailey. Judge Bailey, on remand from this court, said, what is it that constitutes waiver in this particular case? That was the question put to the district court, and the district court made findings. But in part, it put the findings in the context of the Hill case, which is the Ninth Circuit going through its waiver cases in the class action context and says, if you try to get the advantage of the collective proceeding in some fashion, the consolidated proceeding, then you can't say if it's not working out for you, I'd rather be someplace else. I'd rather invoke a different kind of procedural mechanism. And here, they sought to get joint discovery, they sought to get many of the benefits of the aggregation that comes with the MDL process, and then when, as Judge Bailey said, and this is a finding, when it didn't pan out for them, then they sought to abandon that altogether by invoking the individual treatment. They went to the MDL panel, and they filed in their response, and this is in the record, they filed in their response a statement that said, one of the reasons we need an MDL is because there are multiple class actions pending, and we want consistent rulings on class certification. That's not in opposition to class certification, that's not an invocation of the prohibition, and that's a pleading filed before the JPML. That is inconsistent with their invocation. I don't understand why. They want consistent certification orders, that's fine. But in their motion, in the briefing, in their first briefing on the certification, class action certification, they raised the contractual waiver. Judge Niemeyer, I think the crux of our disagreement. They would want every court to apply the waiver similarly. Judge, I think the crux of our disagreement is, I think Your Honor, is collapsing the waiver concept into the forfeiture concept. And the court, the Supreme Court. Waiver is a knowing act of waiving as opposed to omitting it. That's correct, Your Honor. But I don't think it makes a difference in this case, because in this case, they clearly did not reveal any intent to waive it. All the indicators are, in following the rules, they raised it in the class action certification, they raised it in the answer, they raised it in the answers to interrogatories. That's all three years down the road, Your Honor, and our argument is what happened in the first three years. I don't want to speak for your colleague on the other side, but if I'm getting the timing right, I think they would say that during this part of the proceedings, they didn't know which contract you would be relying on. That is a central argument they make. And the very first case that was filed in these proceedings is a case called Taplin v. Marriott, which was filed in Maryland. It was filed on November 30th, which is just after the data breach was revealed, November 30th, 2018. And there, one of the class allegations was that it was a suit brought on behalf of those who used the SPG loyalty program. So that case, the very first one in its class allegations, ties the injury to the status of the individuals as SPG members. If one looks at the public filings of SPG from 2014, which is the year in question, one sees SPG saying to the regulatory authorities that more than 50% of its hotel sales, the nights stayed in hotels, are with SPG loyalty members. By 2023, in the regulatory filing, Marriott says the number is actually 68%. What that shows is that the loyalty program was at the heart of how they sold their rooms. That's at the heart of how they deal with their clients. And we all know it, that you check in and you get free Wi-Fi and all this. And the allegation in the Taplin case at paragraph 78 through 80, it asserts that Marriott or SPG induced them to give their private information in exchange for becoming loyalty members. That is, that they tied the injury and their vulnerability to the fact that they were loyalty members. So this provision is their contractual relation with more than half the class, as they said initially in 2013, or 68%, as they said in 2023. So this can't be a surprise to them. And the allegations were right there from the very first class action filed. Thank you. This waiver issue, do we review the district court's ruling for abuse of discretion? Yes, Your Honor. I think that there are two components to it. The first part is the district court made rulings of law as to what the standard for waiver would be. They're relying not just on Olano and Morgan v. Sundance, but also on Stern v. Marshall. And if the court thinks that it used the wrong standard for waiver and should have used the forfeiture standard and, therefore, that nothing had to be said about this, it didn't matter what happened for the first three years, then that would be an error of law and that's fully reviewable. But what this court did... I'm sorry, just in describing the district court, I don't recall the district court talking about what happened during the first three years. The district court just said, I'm reading this entire provision, notwithstanding the severability and the no waiver clause, as being all one thing. And because they went to an MDL, that's inconsistent with this. Actually, I understand what you're talking about and it is possible to read our initial remand as being for an exploration. Maybe there's something we don't know about, like a weird way this was litigated that we should know about. But that's not what the district court did. Well, the district court went through several moments in the litigation and then they said they didn't about face. And they had, by that point, abandoned five-sixths of this provision and then that was a fact-finding. And I think that if you are to reverse that fact-finding... That's a fact-finding? Yes. It's a recitation of what he determined from the record. He does say that it has clearly waived five-sixths of the provision. Yes, he does say that. And it shouldn't be permitted to cherry-pick. That's right, Your Honor. That's right, Your Honor. But isn't that a construction of the contractual language, which would be a question of law? Well, I think what it says is that there are parts of it that are construction of the contractual language. But if I can make one point before my time runs out on the contractual language, this Court has referred to the severability of the various provisions. This contract is unusual not just in burying the class action waiver in a section called choice of law, but it also does not have a severability provision as such. And I would direct the Court's attention to the same page that was raised by my colleague here, Joint Appendix 1466. 13.19 is what purports to be the severability provision, but it's actually entitled waiver. And what it basically says is that Starwood, in its application of its program for its membership members, can give additional enhancements to some members without waiving the limitations as to others. I thought the severability clause was in 13.22, at the end of 13.22. If any part of it is unenforceable, that part's deleted. Yes, that's, yes, that's, but that's not, okay, I'll, I accept that, Your Honor. Now let me, can I, if I, I'm running out of time, if I can go back to the actual contractual language, because this is a big issue. It says, will be handled individually without any class action. And even if we can hive that off from the rest of the paragraph that it's in, there's a standard canon of contractual interpretation that says you must give meaning to every word in the contract. If it said, will be handled without any class action, that would cover the exact same conduct here. The question is, what's added by the word individually? What does the word individually do for us here? And the answer to that seems to be that it's a prohibition not just on class actions, but on aggregative procedures altogether. Otherwise that. It says individual, not a class action. It looks like it's defining a particular. Anyway, that's a contractual interpretation. While you're still up, I'd just like you to address briefly what the court did on our request to have superiority determined with respect to accenture. With regard to accenture. So the question with regard to accenture is, what's the standard for issue classes? And as this court noted in its opinion. What did the district court do on that? We sent it back to have the district court conduct some superiority analysis. The district court did not address superiority as such. But the district court, Judge Niemeyer, I think to be fair to the district court, the district court construed the remand to be on the waiver question. And there was no further discussion of the issue class as such. So the court is correct. It was not addressed in the district court's opinion. Thank you very much. Thank you, Your Honor. All right. We have, I guess we have next. Who's next? I guess Mr. Hellman.  And I have just, I think, four quick points in rebuttal. Point number one. It was the plaintiffs, including the early filed complaint plaintiffs, who moved for the MDL in this action. You can see that at JA 152. The plaintiffs moved. Marriott agreed, but the plaintiffs moved. Second point. Again, I just want to stress there's a little bit of magic going on here. We're talking about actions taken years before the plaintiffs ever decided to actually base their claims, their classes on the SPG terms. There were 31 contracts. We talked about the three years and the 31 months. They were still talking about 31 contracts 31 months into this case. So that's the lens which you have to understand what happened. As much as I think my friend would like to say it was always about this. It wasn't always about this. It was about other things because they wanted to keep their options open. Point number three. I think I heard a lot about Morgan Sundance and the arbitration case law from the Supreme Court. The antithesis of arbitration is litigation. That's one conceptual framework. The antithesis of a class action waiver is class action certification. The time to raise a class action waiver is at class cert. If you're litigating when you're supposed to be arbitrating, assuming that the contract clearly applies, that's one set of circumstances. This is not that set of circumstances. And then the last point I'd like to make is the larger ramifications of this case. There were dozens of actions filed within 24 hours when this data incident became known. Dozens of actions. The notion that because one contract might have one venue provision or one choice of law provision and another doesn't and that to agree when the plaintiffs move for an MDL somehow waives, intentionally relinquishes a known right to oppose a class that was just a glint in the plaintiff's eyes at that point, would have been in kindergarten if you started from that point, is bad policy and not what the law requires. In fact, it's the opposite of what this Court's holdings have said. If the Court has no further questions, I'll give back the balance of my time. All right. Thank you. Thank you. Mr. Anderson. Your Honors, it's now common ground that the District Court didn't do what it was supposed to do in terms of conducting the further superiority analysis. Please don't send this back, though, and say try again. I think this Court needs to provide clear guidance that in the context of this case and given the District Court's own prior findings about the lack of commonality across issues of injury and causation, a Rule 23C4 issue class simply doesn't make sense in these circumstances. The nature of these individualized issues is such that the class action is not going to meaningfully advance or create or reduce the number of trials that are going to have to happen in this case. These issues are not tertiary. They're not secondary. Issues of injury and causation are fundamental both to the substance of plaintiff's claims but also to questions of the Court's jurisdiction to bind the class members that will come before it eventually at summary judgment or trial to seek adjudication of that. For those reasons, we think that the Rule 23C4 issue classes should be reversed under principles of Rule 23. Thank you, Your Honors. All right, we'll come down and greet counsel. There's quite a few counsels, so it'll take quite a while. And then we'll take on to the next case. All right, we're going to take a brief recess. This Honorable Court will take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris